No. 14,959.

WILSON *v.* WILSON.
(122 P. [2d] 241)

Decided December 22, 1941.   Rehearing denied February 2, 1942.

Mr. EUGENE H. TEPLEY, for plaintiff in error.

Mr. F. E. DICKERSON, Mr. GEORGE O. BAKKE, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE YOUNG delivered the opinion of the court.

THIS cause is before us on writ of error to review a judgment of the district court entered in a divorce action awarding the custody of three minor children to the father.

The action for divorce, only incidentally here involved, was instituted by the husband, Raymond Wilson, May 31, 1938, on the ground of cruelty. In this action he asked for the custody of the children. Defendant, L. Josephine Wilson, denied the charge of cruelty, and by cross complaint charged plaintiff with cruelty and asked that the custody of the children be awarded to her. On the hearing of the divorce action, defendant prevailed on her cross complaint, no contest being presented by plaintiff, and an interlocutory decree of divorce was granted her July 1, 1938, a final decree being entered January 4, 1939.

It appears that on the date of entry of the interlocutory decree the parties entered into an agreement whereby plaintiff agreed to pay defendant fifty dollars per month as alimony and support money. It was further agreed, for the reason that the children were then with their paternal grandparents in Illinois, that the court make no findings and enter no order with respect to their custody, but that jurisdiction over all matters affecting such custody be retained by the court, with leave to either party to apply to the court at any future time for additional orders with respect thereto. The trial court recognized and gave effect to this agreement in its decree.

The record discloses that shortly following the birth of the younger boy in 1931, defendant developed what was termed by a medical witness as a "puerperal psychosis," a condition sometimes incident to pregnancy and childbirth, and she was thereafter placed in a sanatorium for a time. Subsequently, and up to the time of trial of the divorce action, she was in Illinois with a sister for a part of the time, and a part of the time in Denver, where the children were kept by plaintiff until 1935, when they were sent to their paternal grandparents in Illinois where they remained until shortly following the entry of the final decree of divorce, when the father returned them to Denver because of his

mother's death. Defendant did not see the children at any time from 1931 to 1935, when they returned to Illinois, but subsequently she saw them occasionally at their grandparents' place of residence. Five days after the final decree was issued, plaintiff remarried and the children were taken to the new home which he then established. Shortly thereafter, January 31, 1939, a petition for their custody was filed by defendant.

On the twentieth day of May, 1939, when the petition for custody came on for hearing, the children, a girl and two boys, were of the ages of 14, 11 and 10 years, respectively. Testimony was presented on behalf of both parties, and at the conclusion thereof the cause was continued for six months, apparently for the purpose of ascertaining whether the parents, by mutual consent, could arrive at a satisfactory solution of the custodial problem by permitting the children to visit the mother at reasonable times. It does not appear that any formal order of custody had been entered previous to the time the matter again came on for hearing April 19, 1940, when additional testimony was taken. Following this hearing, the court entered the first order as to custody June 1, 1940, the pertinent portion of which reads: "After reviewing the entire evidence of the case, and having in mind the former hearings, as well as the full and complete hearing now under advisement, the Court is of the opinion that the custody of the three minor children should remain with the father, subject to the right of visitation and temporary custody on Sundays with the mother."

Defendant excepted to this order, and to the end that a review might be had in this court, a bill of exceptions was settled on September 4, 1940.

August 1, 1940, the attorney for plaintiff served the following notice on defendant's counsel: "You will please take notice that on Friday, the 2d day of August, 1940, at the hour of 2:00 P.M. or as soon thereafter as counsel can be heard, we shall apply to the Court to set for trial

the Petition for Change of Custody, when and where you may be present if you so desire."

August 2, 1940, plaintiff filed in court a "petition for modification of the custody and support order," the pertinent part thereof being as follows: "Comes now the plaintiff above named by his attorney, . . . and respectfully petitions this honorable Court for an order modifying and changing the order heretofore entered by this honorable Court in reference to the custody of the minor children of the parties hereto, and the support of the defendant herein, and as grounds for such petition the plaintiff states that a change of conditions, that a material change of conditions has arisen, requiring a modification of the orders heretofore entered."

On the same day, August 2, 1940, apparently based on the petition filed that day, the court entered the following order: "It is ordered by the Court that said custody and support order heretofore entered herein, be modified until the further hearing of this cause, and that this cause be, and the same hereby is, set for further hearing on the 6th day of September, A.D. 1940, at 10:00 o'clock A.M."

It will be observed that there is no allegation of fact in plaintiff's petition as to what change in conditions occurred, nor what modification was desired. The order is equally silent concerning any finding of what change in conditions had occurred, and to what extent the order was modified. The mere recitation that the court is sufficiently advised, and that the former order be modified until the further hearing of the cause, is all the record discloses. That there was a modification and, if so, what the modification was, we can only surmise from the reported colloquy between court and counsel for the respective parties. From this it appears that a few days prior to the entry of the order, the plaintiff, his present wife, the three children and plaintiff's attorney, appeared personally before the trial Judge, and upon the statement of the children that they were afraid to visit their

mother and that she acted strangely, the court temporarily suspended a former order, but so far as the record discloses, no minutes of the suspension were made. The court directed plaintiff's attorney to file a petition for modification so that there might be a hearing on the matter. Presumably, the petition filed August 2, was responsive to this suggestion.

At the hearing on the petition for modification, after the afore-mentioned colloquy between the court and the attorneys, but with no testimony taken, the court entered an order on the petition to modify its original order. Defendant's counsel stated that he did not consent, that the court could do as it pleased, but that he desired an exception to the court's order. Thereupon, plaintiff's counsel moved that the temporary order denying visitation rights be made final. The court entered an order in the following words:

"And thereupon, on oral stipulation between the parties hereto, visitation rights to said defendant L. Josephine Wilson, be, and hereby is, now made a permanent order, with said defendant allowed exceptions thereto; and said defendant further waives hearing for modification of temporary order for visitation heretofore made herein;

"It is further ordered by the Court that the exception of L. Josephine Wilson to the award of Thirty Dollars ($30.00) attorney fees, heretofore allowed said attorney, be and hereby is granted."

We are at a loss to understand, in the light of the discussion between the court and counsel, the express refusal of defendant's counsel to consent to the order, the entire lack of allegations of fact in the petition, and with no testimony taken, why the court entered the order as if by stipulation. It is also difficult to understand of what the modification consisted when the court expressly says in the order, "visitation rights to said defendant L. Josephine Wilson, be, and hereby is, now

made a permanent order, with said defendant allowed exceptions thereto."

Out of the heterogeneous mass of proceedings it appears that three questions are presented, namely: (1) As to the last modification of the custody order being a proper exercise of the court's discretion, and as to the original order granting exclusive custody to the father, being a proper exercise of the court's discretion; (2) as to the propriety of the court's denying visitation rights to the mother, if we assume such to be the purport of the last order, as both counsel seem to do; (3) as to the reasonableness of the court's allowing only thirty dollars to defendant's attorney for his services in the matter.

It appears from the record that the children are reasonably well cared for by the father, and it does not appear that he is an unfit person to have their custody. He operates the Ray Wilson Flying School, a corporation for the training of aviators. This company, ninety per cent of the stock of which he owns, recently purchased on time, thirteen thousand dollars worth of planes, for which defendant was also personally obligated on the note evidencing the indebtedness therefor. There is a judgment against the company resulting from a personal injury suit for five thousand dollars which then was pending on review in this court. In addition, plaintiff owed the company $840.00, making his total indebtedness—for to all practical intents and purposes the company and the plaintiff may be considered as one—$18,840, offset to the extent of $13,000 by new equipment. Plaintiff had drawn in salary from the company, and for services in the National Guard for two years preceding, approximately $2,200 annually. He pays his former wife, the defendant, under the contract, and decree approving it, fifty dollars per month for her support.

It appears also from the record, that the mother is a fit person to have the custody of the children. She was formerly a school teacher, and is now regularly giving music lessons to a number of pupils. Her devotion to,

and interest in, the children were vouched for by witnesses whose testimony is not contradicted or impeached in any way. Plaintiff's counsel stated in open court that plaintiff was making no claim that defendant was mentally incompetent, that he did not attack her character, but that he was merely attempting to show, that all the circumstances considered, it was best that conditions remain as under the modified order, construed by the parties as giving the father exclusive custody, with even visitation rights denied to the mother.

The testimony discloses that the circumstances upon which reliance is placed as making the custody by the father more desirable are, that he maintains a home, has a wife to support, and that his income is insufficient to maintain two domiciles. These statements were made on the hearing when the original order awarding custody to the father and visitation rights to the mother was entered. Before the bill of exceptions was settled, so that defendant might have this order reviewed, the second order was entered depriving the mother of visitation rights, at least the parties so construe that order. There being no testimony taken in this latter proceeding, as disclosed by the supplemental record and bill of exceptions, we assume the mental competency and good character of defendant still obtains. We think defendant's general attitude toward the problem and her fitness is well disclosed by her replies to a few of the questions asked her on the first hearing:

"Q. Now, Mrs. Wilson, if you were awarded custody of the children, do you want to have absolute custody for twelve months a year and have Ray have visitation like you have been having? A. No.

\* \* \*

"Q. You say 'No.' Does that mean you don't want custody of the children? A. I would not like a reversal to be dealt to him as has been dealt to me. I don't believe it would be satisfactory. I would like the Court

to understand that I want the children as much as I can have them.

"Q. Then why do you say 'No.'? A. I am aware of the fact that nature calls for children to have both parents, if their life is spared so they can. I am further aware their father has capacity beneficial to the children that I couldn't replace in any other way. On the other hand, I know that I have an understanding with my children that no other woman in the world can understand. More than that, they have inherited certain things that I would like to bring out, which I know are there because of myself. I am thankful that they have access to their father's love and care and to the help he can give them. But in my opinion I haven't been given, or granted the notice that belongs to a mother.

"Q. Then, Mrs. Wilson, you want custody, but you don't want absolute custody, is that right? A. I would like to have them live with me.

"Q. What sort of an arrangement do you think would be fair to both parties in this cause?"

   *  *  *

A. "The position of the woman is at home, and in view of that and the fact that their father by reason of the nature of his work is away, I feel, since the question has been asked me, that rather than put the children with a third party, which at the present time happens to be a stepmother inexperienced in motherhood, and also not by nature in a capacity to understand children, I feel that by all means nine months of the year should be given to me to have my children. Having been a school teacher, I feel in a better position to help them in their school work. I know my daughter is musical. She has no chance to develop it unless she is with me, and it is my occupation, and I can easily take her into my home. I feel it would be the most satisfactory arrangement that could be made would be to allow me to have my children with me in my home nine months out of the year,

or approximately that, and let the father have them in vacation time."

The question regarding the matter of custody raised by the assignments of error practically amounts to this: Granting the moral fitness of both father and mother to have the custody of the children, the father being remarried and having a home which he maintains for himself and his second wife out of an income of approximately $2,200 a year, is the mother of the children entitled to part-time custody and sufficient contribution from the father so she can maintain a home for them while they are in her custody? We think so. The underlying principles that impel us to such conclusion have been announced in many decisions of this and other courts. It is sufficient to cite a recent case in which they are clearly stated, *Averch v. Averch*, 104 Colo. 365, 90 P. (2d) 962.

When the father remarried he assumed new obligations, but in so doing he was not relieved of those theretofore assumed and which were presently existing. No fault for the division of the family is charged, nor can it be imputed, to the mother on the record. We note this, not in disparagement of the father nor as imputing fault to him, but merely to elucidate the proposition that the mother's claim to the part-time custody and society of the children stands on a basis equally as firm and meritorious as that of the father. Under such circumstances, we think it was not a reasonable exercise of the court's discretion to give exclusive custody to the father, and deny to the mother even visitation rights. Upon the showing contained in the record, we think that the mother's desire that she be permitted to have the custody of the children during the nine months comprising the school year, that is to say, from September first to June first, was reasonable. We think also that a proper exercise of the court's discretion would have resulted in an award to the mother of fifty dollars a month in addition to the fifty dollars that she is receiving monthly for her

support and maintenance during the nine months that she has such custody, such additional fifty-dollar monthly payment to be suspended during the three months that the father has custody.

Counsel for defendant should be allowed $75 for his services, in addition to the $75 heretofore awarded by this court.

The findings that we have herein made as to what would have been a proper exercise of the court's discretion and the order hereinafter entered thereon, are based on the conditions of the respective parties shown to exist under the testimony disclosed by the record. Such findings and order are not to be construed as a prohibition against the district court's exercising a continuing jurisdiction over the cause after remittitur shall have been issued, nor as a bar to its subsequent modification of the order herein entered based on a change of conditions.

It is ordered that the judgment of the district court be reversed and that the cause be remanded with directions to said court to enter an order for the custody and support of said children in accordance with the views herein expressed.

It is further directed that the district court enter an order requiring the plaintiff to deposit in the registry of that court, within thirty days from the receipt of remittitur herein, the sum of $75, to be paid to defendant's counsel as reasonable attorney fees.

Mr. Justice Knous dissents.

Mr. Justice Bakke not participating.

### On Petition for Rehearing

Mr. Chief Justice Young.

While, upon the record before us we are of the opinion that our decision and disposition of the case is proper and supported by the record as it now stands, upon further consideration of the particular question strongly

suggested in the petition for rehearing as to the mental competency of the defendant to properly discharge the duties incident to her custody of the children, and having in mind that the paramount consideration is their welfare, we are of the opinion that the resolution of the problems presented and the disposition indicated as proper on the record, should not preclude the trial court, either on application of plaintiff, or on its own motion, from speedily taking testimony on the question suggested; making specific findings based thereon and entering such order as its findings shall show to be for the best interests of the children.

Unless such action shall be taken within thirty days from the date remittitur is received, the order as to custody heretofore made, shall stand, subject to any modification made necessary by change of conditions, to be determined as therein provided.

The petition for rehearing is denied.

MR. JUSTICE HILLIARD, who formerly concurred, now dissents.